UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS LEWIS PLAIR, #239068,

                    Petitioner,

v.                                            CASE NO. 2:10-cv-10850
                                              HONORABLE GEORGE CARAM STEEH
HUGH WOLFENBARGER,

                    Respondent.

_____/


**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**DENYING A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

       Petitioner Thomas Plair has applied for the writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The habeas petition challenges petitioner's convictions for one count of

criminal sexual conduct in the first degree and two counts of criminal sexual conduct in the

second degree.  Petitioner alleges that (1) the admission of hearsay statements deprived

him of his right to a fair trial; (2) there was insufficient evidence to support his conviction for

criminal sexual conduct in the second degree; and (3) the state court erred by considering

second-degree criminal sexual conduct as a lesser offense and by refusing to consider

assault with intent to commit criminal sexual conduct, and trial counsel was ineffective for

failing to object.  These claims lack merits, and the state court's adjudication of the claims

was objectively reasonable.  Accordingly, the habeas petition is denied.  A procedural

history and discussion follow.

## I.  Background

### A.  The Facts

Petitioner was charged in Kent County, Michigan, with three counts of criminal sexual conduct in the first degree.  The charges arose from allegations that petitioner sexually penetrated or touched the genital area of his thirteen-year-old daughter (J.P.), his eleven-year-old niece (R.D.), and his niece's seven-year-old friend (D.M.).[1]  The incidents allegedly occurred at petitioner's home in Grand Rapids sometime between August 14, 2004, and January 15, 2006.

Petitioner was tried without a jury in Kent County Circuit Court in September of 2006.  D.M. testified that petitioner put his "private part" inside her and used his "front part" to touch her front "private part" underneath her underwear.  D.M.'s foster mother testified that D.M. informed her one day at dinner that a man named Thomas touched her private parts when she spent the night at a friend's house.

R.D. testified that, in April of 2005, she started living with her grandmother, her uncle, and petitioner, whom she identified as her Uncle Thomas.  She claimed that petitioner put his hands on her private part between five and ten times and, on one occasion while she was in bed, he pulled down her pajama bottom and licked her private area.  Afterward, petitioner told her, "Whatever happens in this room stays in this room." She did not scream or yell because she was a bit afraid, but she later told her cousin and sister about the incident.

Petitioner's daughter, J.P., testified that she lived with her mother, but would often

---

[1]  To protect the victims' identities, the Court will refer to them by their initials instead of their names.

go to petitioner's home to be with her cousin, R.D., who was a close friend.  One day when she was at petitioner's home, petitioner came into the room where she was sleeping and asked her to lie on the floor.  He then pulled down her pants and inserted two fingers in her vagina.  He said that, if she told anyone other than R.D. about the incident, she would find out what would happen to her.

Dr. Eugene Shatz testified as an expert in the field of detecting and analyzing child abuse.  He claimed that, during an examination of the alleged victims at the Children's Assessment Center in Grand Rapids, J.P. disclosed inappropriate digital/genital contact and genital/genital contact between her biological father Thomas and herself.  D.M. disclosed to a medical social worker who was assisting Dr. Shatz that a man named Tommy touched her genital area with his hand and forced her to touch his genitals.  D.M. also disclosed an incident of penile/vaginal penetration.

Detective Pete Kemme interviewed all three of the complaining witnesses.  He testified that D.M. did not disclose any history of sexual abuse and that both J.P. and R.D. were vague as to the time frame for the incidents involving them.

Petitioner's nephew, Emanuel Buchanan, and petitioner's brother, Lamont Plair, testified for the defense.  Emanuel testified that, in 2005, he lived with petitioner, his grandmother, his father, and his cousin (R.D.).  One night, as he was playing cards with R.D. and J.P., Petitioner came into the room and told R.D. and J.P. to go to bed because it was a school night.  J.P. became angry and argued with petitioner because Emanuel was permitted to stay up.  R.D. and J.P. knew that petitioner was on parole, and they began talking about doing a scam on petitioner to put him back in prison.  That same week, J.P. made certain allegations to her mother, and her mother called the police.

3

Lamont Plair lived in the same household.  He testified that every time petitioner tried to discipline J.P. and her brother, the children would say, "You do anything, we're going to get you locked back up."  He thought that they were "bad kids," that they lied "like you wouldn't believe," and that the children might make up a story to get petitioner locked up.

Petitioner also testified, and he denied having any sexual contact with J.P., R.D., or D.M.  He claimed that, on the night when the children were playing cards and he got into an argument with J.P., he heard J.P. whispering, "We'll get him; don't worry about it."

### B.  The Trial Court's Findings and Conclusions; the Sentence and Direct Appeal

The prosecutor and defense counsel agreed during closing arguments that the case was a credibility contest.  Defense counsel argued that the prosecution failed to prove its case because the testimony of the complaining witnesses was vague and lacked credibility.  Defense counsel maintained that J. P. and R.D. fabricated their stories because petitioner had threatened to separate them from each other.

The trial court stated at the conclusion of the trial that it found the prosecution witnesses and Lamont Plair to be credible, but not petitioner or Emanuel Buchanan.[2]  The court found petitioner guilty, as charged in count one, of one count of criminal sexual conduct in the first-degree.  *See* MICH. COMP. LAWS § 750.520b(1)(b)(ii) (sexual penetration of a relative who is at least thirteen years old and less than sixteen years old).  As to counts two and three, the court found petitioner guilty of criminal sexual conduct in the second

---

[2]  The trial court opined that Lamont Plair was honest in assessing the parties' relationships, but that Mr. Plair's testimony did not weaken the evidence sufficiently to exonerate petitioner, given the independent corroboration of the girls' testimony.

degree.  *See* MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under the age of thirteen).

On October 30, 2006, the trial court sentenced Petitioner as a habitual offender to imprisonment for thirty-nine to sixty years for first-degree criminal sexual conduct (Count I) and to thirty to fifty years in prison for each count of second-degree criminal sexual conduct (Counts II and III).  All the sentences were ordered to run concurrently with one another, but consecutive to a sentence for which petitioner was on parole.

In an appeal of right, petitioner argued that (1) the admission of hearsay statements by the complaining witness deprived him of his right to a fair trial; (2) there was insufficient evidence to support his conviction for criminal sexual conduct in the second degree; (3) the state court erred by convicting him of second-degree criminal sexual conduct and by refusing to consider the lesser offense of assault with intent to commit criminal sexual conduct, and  trial counsel was ineffective for failing to object; and (4) he was sentenced on the basis of inaccurate information and incorrectly scored offense variables.  The Michigan Court of Appeals affirmed petitioner's convictions in an unpublished *per curiam* opinion, but remanded the case for re-sentencing on the basis of a reduced offense-variable score.  *See People v. Plair*, No. 274575, 2008 WL 3157568 (Mich. Ct. App. Aug. 7, 2008).  Petitioner was later re-sentenced to a term of twenty-two to fifty years in prison for first-degree criminal sexual conduct (count one) and twenty to forty years for second-degree criminal sexual conduct (counts two and three).

Petitioner raised the same issues, with the exception of his sentencing claim, in the Michigan Supreme Court, which denied leave to appeal on November 25, 2008, because it was not persuaded to review the issues.  *See People v. Plair*, 482 Mich. 1071 (2008)

5

(table).  The state supreme court denied reconsideration on March 23, 2009.  *See People*

*v. Plair*, 483 Mich. 917 (2009) (table).

**C.  The Habeas Petition and Responsive Pleading**

Petitioner signed and dated his *pro se* habeas corpus petition on February 21, 2010.

The grounds for relief read:

> (1) Petitioner was denied a fair trial by the admission of hearsay statements made by the complaining witness. US CONST AM VI.
>
> (2) The evidence was insufficient to support Petitioner's conviction of second-degree criminal sexual conduct.  US CONST AM XIV.
>
> (3) Petitioner was denied the constitutional right to a fair trial and is entitled to reversal where the trial court committed legal error in violation of the United States Constitution when it convicted him of second-degree criminal sexual conduct and refused to consider assault with intent to commit sexual contact; alternatively, defense counsel was ineffective in failing to object.[3]

Respondent Hugh Wolfenbarger filed an answer to the petition through counsel.  He

argues that:  (1) petitioner's first claim (inadmissible hearsay) is either not cognizable or it

lacks merit because petitioner has not established that the evidence was improperly

admitted in violation of due process, and the state court's adjudication was not contrary to,

or an unreasonable application of, clearly established Supreme Court law; (2) petitioner is

not entitled to relief under his second claim (insufficient evidence) because a rational trier

of fact could have  found that the prosecutor proved the elements of the offense beyond

a reasonable doubt; and (3) petitioner's third claim (lesser degree of guilt) lacks merit or is

not cognizable because it does not allege a violation of federal law, and defense counsel

---

[3] These issues were fully exhausted in the state courts, as required by 28 U.S.C. § 2254(b)(1)(A).

6

was not ineffective for failing to object to the claimed error.

## II.  STANDARD OF REVIEW

State prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."  *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

7

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. DISCUSSION

#### A. Admission of the Hearsay Statements

Petitioner claims that he was denied his Sixth Amendment right to a fair trial because D.M.'s statements to her foster mother, to a physician or medical social worker, and to a detective were admitted at trial in violation of the Michigan Rules of Evidence. D.M. testified that Petitioner touched her front "private part" under her clothes with his front "private part" (Tr. Sept. 18, 2006, at 23-24.) To support D.M.'s testimony, the prosecution produced D.M.'s foster mother, Sheila Dobbs, who testified that, approximately three weeks after D.M. came to live with her, D.M. initiated a conversation with her at dinner. D.M. asked her foster mother if she could tell her something that had happened to her in the past. D.M. then described a situation where a man named Thomas touched her private parts at her friend R.D.'s home. (*Id.* at 43-45.)

Petitioner contends that additional hearsay statements were admitted during Dr. Eugene Shatz' testimony. According to Dr. Shatz, D.M. informed a medical social worker that a man known as Tommy had touched her private parts and forced her to touch Tommy's genitals. D.M. also told the medical social worker that there was one episode of

8

penile/vaginal penetration  (*Id.* at 119-20.)

Petitioner's final allegation of hearsay concerns D.M.'s statement to either a detective or to her foster mother that petitioner put his finger inside her.  (*Id.* at 26-27.) Petitioner asserts that D.M.'s statements to the detective, to her foster mother, and to the physician or social worker were inadmissible hearsay and that the erroneous admission of the statements at trial deprived him of a fair trial.

### 1.  Clearly Established Law

Petitioner's claim that he is entitled to habeas relief because the Michigan Rules of Evidence were violated at his trial is without merit because "'federal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Challenges to state-court determinations on state-law questions are not cognizable claims under § 2254 unless the alleged error amounted to an infringement of federal law.  *Id.* at 67-68.  If a state court's "evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Generally, however, issues dealing with the admissibility of evidence are not questioned by a federal habeas court.  *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

### 2. Application

### a.  The Statement Allegedly Made to the Detective

The Michigan Court of Appeals rejected each of Petitioner's hearsay claims.  As to D.M.'s prior statement to a detective, the Michigan Court of Appeals stated that petitioner

was confusing hearsay with a question asked by the prosecutor.  The Court of Appeals opined that the alleged evidence "was not evidence at all but the prosecutor's reference to D.M.'s prior statement regarding an instance of digital penetration.  The state court's conclusion is supported by the record[4], and because "a prosecutor's question does not constitute evidence," *United States v. Pando Franco*, 503 F.3d 389, 395 (5th Cir. 2007), petitioner's claim about D.M.'s statement to the detective has no merit.

### b.  The Disclosures to the Foster Mother

The Michigan Court of Appeals determined that testimony by D.M.'s foster mother regarding D.M.'s disclosures to her was admissible under the "tender years" exception to the hearsay rule, which reads:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

---

[4]  The prosecutor asked D.M. whether she remembered telling a detective or her foster mother that petitioner put his finger inside of her.  D.M. responded that she did not remember saying that.  (Tr. Sept. 18, 2006, at 26-27.)

10

Mich. R. Evid. 803A.

D.M.'s statement to her foster mother was introduced through Sheila Dobbs, not D.M., and no one disputed that D.M. was under the age of ten when she made the statement.  Further, the Michigan Court of Appeals determined that D.M.'s disclosures were spontaneous in that they "were made without any prompting from, or under any questioning by, the foster mother."  *Plair*, 2008 WL 3157568, at *1.  As for the delay in disclosing the abuse, the Court of Appeals determined that the delay "was excused by the fact that the seven-year-old needed time to become comfortable with her foster mother and made the disclosures just three weeks after being placed in that foster home."  *Id.*  These conclusions are supported by the foster mother's testimony at trial.  (Tr. Sept. 18, 2006, at 43–45).  Furthermore, D.M.' statements to her foster mother, were the first corroborative statements.


The Court concludes that all the elements of the "tender years" exception to the hearsay rule were satisfied.  Therefore, the foster mother's testimony regarding D.M.'s statements to her were admissible and did not violate petitioner's right to a fair trial.

### c.  The Disclosures to the Medical Social Worker

The final allegation of hearsay concerns D.M.'s statements to a social worker, as explained by Dr. Eugene Shatz at trial.  The Michigan Court of Appeals held that this testimony was not even hearsay because the testimony was not offered to prove the truth of the matter asserted, but to explain the physician's preparations for his imminent physical examination of D.M.  *See Plair*, 2008 WL 3157568, at *1; *see also* Tr. Sept. 18, 2006, at 116-18.  This Court must defer to the state appellate court's ruling that the testimony was

not hearsay, "because state law governs questions concerning the admissibility of evidence." *Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (citing *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992)).

Even if Dr. Shatz' testimony regarding D.M.'s statements was inadmissible hearsay, the trial court found D.M. to be credible, and the foster mother (Sheila Dobbs) corroborated D.M.'s testimony before Dr. Shatz testified. In addition, the trial court obviously discounted Dr. Shatz' testimony about D.M. being sexually penetrated, because the court acquitted petitioner of that charge and found petitioner guilty of the less serious crime of sexual contact. Therefore, Dr. Shatz' testimony likely did not have a "substantial and injurious effect or influence" on the trial court and was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

For all the reasons given above, the contested statements did not deprive petitioner of a fundamentally fair trial. Therefore, petitioner is not entitled to habeas relief on the basis of his first claim.

## B. Sufficiency of the Evidence

Petitioner alleges next that there was insufficient evidence to sustain his conviction for second-degree criminal sexual conduct involving D.M. because the essential elements of the crime were not proven beyond a reasonable doubt. There was no physical evidence of sexual abuse, and, according to petitioner, the prosecutor failed to prove that petitioner had sexual contact with D.M. and that he did so for sexual purposes. Petitioner alleges that, although D.M. testified that petitioner's front "private parts" touched her front "private parts," these terms were too vague to determine that petitioner touched D.M. in her genital

12

area or made her touch his genital area for a sexual purpose.

### 1.  Clearly Established Law

The relevant question on habeas corpus review of a sufficiency-of-the-evidence claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal citation omitted) (emphasis in original).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324, n.16.  The elements of second-degree criminal sexual conduct, as charged in this case, required the prosecution to prove that petitioner engaged in sexual contact with a person under thirteen years of age.  MICH. COMP. LAWS § 750.520c(1)(a).  A sexual purpose is necessary to be found guilty of the offense.  *People v. Norman*, 184 Mich. App. 255, 260 (1991).

### 2.  Application

In Michigan, "'[s]exual contact' includes the intentional touching of the victim's or actor's intimate parts," MICH. COMP. LAWS  § 750.520a(q), and "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being."  MICH. COMP. LAWS  § 750.520a(e).  According to D.M., petitioner "pulled down her pants and touched her front private part, in the area under her underwear, with his front private part."

*Plair*, 2008 WL 3157568, at *1.  The Michigan Court of Appeals concluded from D.M.'s testimony that the evidence was sufficient to establish beyond a reasonable doubt that petitioner touched D.M.'s genital area.  This conclusion was objectively reasonable, because the testimony of a sexual assault victim alone is sufficient to support a conviction, MICH. COMP. LAWS § 750.520h, and a victim's testimony that the defendant touched her "private part" is anatomically specific enough to sustain a conviction for sexual abuse. *United States v. White Bull*, 646 F.3d 1082, 1087-89 (8th Cir. 2011).

As for petitioner's intent, the trial court was entitled "to draw reasonable inferences from basic facts to ultimate facts,'" *Jeffers*, 497 U.S. at 782 (quoting *Jackson*, 443 U.S. at 319), and to reasonably infer from D.M.'s testimony that petitioner touched her genital area for a sexual purpose or in a sexual manner, MICH. COMP. LAWS § 750.520a(q).  Petitioner's intent "can be inferred from the obviously sexual nature of the contact."  *White Bull*, 646 F.3d 1089.  Thus, petitioner's argument that D.M.'s testimony was too vague to satisfy the "sexual contact"and "sexual purpose" elements of second-degree criminal sexual conduct lacks merit.

When viewed in the light most favorable to the prosecution, a rational trier of fact could have concluded that there was sufficient evidence to convict petitioner of second-degree criminal sexual conduct.  Although the trial was a credibility contest and the facts may have been susceptible to a different interpretation, "[u]nder the *Jackson v. Virginia* standard, a reviewing court does 'not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact].'"  *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.

14

2009)) (alterations added).

The state appellate court's decision was not contrary to, or an objectively unreasonable application, of *Jackson*. Therefore, petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence.

### C. Lesser Offenses

#### 1. The Conviction for Second-Degree Criminal Sexual Conduct

As noted, Petitioner was charged with three counts of first-degree criminal sexual conduct. In his third and final claim, petitioner alleges that the trial court committed a legal error by convicting him of two counts of second-degree criminal sexual conduct as a lesser-included offense of first-degree criminal sexual conduct. Petitioner contends that, under state law, second-degree criminal sexual conduct is not a necessarily-included or inferior offense of first-degree criminal sexual conduct and, therefore, the trial court should not have convicted him of second-degree criminal sexual conduct.

The Michigan Court of Appeals determined that petitioner waived review of this claim by agreeing at trial that second-degree criminal sexual conduct "probably" was a lesser-included offense of first-degree criminal sexual conduct.[5] Even if petitioner did not

---

[5] The alleged waiver occurred during defense counsel's closing argument. He argued that the prosecutor had failed to prove the penetration element of criminal sexual conduct in the first-degree and that, if the trial court nevertheless believed that sexual contact occurred, the court should consider a lesser-included offense such as assault with intent to commit criminal contact or assault with intent to commit criminal sexual penetration. When the court asked defense counsel whether any other criminal sexual conduct was a lesser-included offense, defense counsel stated that he did not think so because he thought that one of the witnesses has said petitioner touched her private parts over her clothes. The prosecutor pointed out that criminal sexual conduct

15

waive review of his claim, the question of whether the state court had subject-matter jurisdiction over a purely state-law criminal charge is not a cognizable matter in federal habeas corpus.  *Primus v. Padula*, 555 F. Supp.2d 596, 625-26 (D. S.C. 2008).  Thus, petitioner has no right to relief on the basis of his claim that the trial court convicted him of a lesser offense.

### 2.  Failure to Consider Assault with Intent to Commit Criminal Sexual Conduct

Petitioner argues in the alternative that he was denied his right to a fair trial because the trial court denied his request to consider the lesser-included offense of assault with intent to commit criminal sexual conduct.  According to petitioner, the evidence supported a conviction for assault with intent to commit criminal sexual conduct, but not criminal sexual conduct in the second-degree.

The United States Supreme Court has not determined whether the failure to consider lesser-included offenses in non-capital cases such as this one violates the right to due process.  *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).  Therefore, the United States Court of Appeals for the Sixth Circuit has concluded that "failure to [consider] a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'"  *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002)

---

in the second-degree would be more appropriate, as the prohibited conduct in the statute includes touching over the clothing.  Defense counsel responded that he had forgotten criminal sexual conduct in the second-degree included touching over the clothing.  He then agreed that criminal sexual conduct in the second-degree was the appropriate lesser-included offense.  (Tr. Sept. 19, 2006, at 68-71.)

(quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).   "[A] Beck [consideration] is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982)).   A trier of fact is not required to consider a lesser-included offense when the evidence does not support it.   *Id.*

The Michigan Court of Appeals determined that petitioner essentially abandoned his request for consideration of assault with intent to commit criminal sexual conduct when he conceded that it was appropriate for the trial court to consider second-degree criminal sexual conduct.   The Court of Appeals went on to say that "the evidence supported a completed sexual touching or sexual penetration, not an assault in which such a touching or penetration was not accomplished."   *Plair*, 2008 WL 3157568, at *3.

This Court agrees that consideration of assault with intent to commit criminal sexual conduct would not have been appropriate.   The evidence supported the greater offense (criminal sexual conduct), not the lesser offense (assault with intent to commit criminal sexual conduct).   Thus, the trial court was not required to consider assault with intent to commit criminal sexual conduct, and petitioner is not entitled to relief on the basis of the trial court's failure to consider a lesser offense.

### D.  Ineffective Assistance of Counsel

Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel.   Specifically, petitioner claims that defense counsel failed to object

17

to (1) the admission of hearsay testimony and (2) the trial court's consideration of criminal sexual conduct in the second-degree.  The Michigan Court of Appeals concluded that petitioner was not denied effective assistance of counsel.

### 1. Clearly Established Law

The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating a claim of ineffective assistance. *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011).  Under *Strickland*, an attorney is constitutionally ineffective if "counsel's performance was deficient [and] the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Id.* at 788 (internal and end citations omitted).

### 2. Application

18

Petitioner's claim that he was denied effective assistance of counsel because defense counsel did not object to hearsay testimony lacks merit.  The prosecutor's question and the physician's testimony about D.M.'s out-of-court statements were not hearsay, and D.M.'s statements to her foster mother were admissible under Michigan Rule of Evidence 803A, the tender-years exception.  Thus, any objections to the alleged hearsay testimony would have been futile.  Counsel is not required to raise futile objections to avoid a claim of ineffective assistance.  *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

As for counsel's failure to object to the trial court's consideration of second-degree criminal sexual conduct as a lesser-included offense of first-degree criminal sexual conduct, the Michigan Court of Appeals held that defense counsel's actions did not fall below an objective standard of reasonableness.  The Court of Appeals stated that,

> [g]iven the evidence presented at trial, it was reasonable for counsel to hope for convictions of the 15-year-offense of CSC II as opposed to the life sentence of CSC I.  Moreover, at trial defendant denied any sexual penetration *and* any sexual contact with the victims; his defense constituted a rebuttal of CSC II as well as CSC I.  Under the circumstances, defendant has not met his burden of establishing ineffective assistance of counsel.

*Plair*, 2008 WL 3157568, at *3 (emphasis in original).

This Court agrees with the state court's reasoning.  The trial court could have concluded from the three complaining witnesses' testimony that petitioner sexually penetrated them.  Because of defense counsel's willingness to have the trial court consider second-degree criminal sexual conduct, petitioner was acquitted of two counts of first-degree criminal sexual conduct, which carries a maximum penalty of life imprisonment, and was found guilty of second-degree criminal sexual conduct, which carries a less severe

19

penalty.

Petitioner has not shown that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Therefore, the decision of the Michigan Court of Appeals on petitioner's ineffective-assistance-of-counsel claims was not contrary to, or an unreasonable application of, *Strickland*.

## IV.   CONCLUSION

The state appellate court's rejection of petitioner's claims did not result in a decision that was contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The state court's decision also was not "so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 131 S. Ct. at 786-87.  Accordingly, the petition for a writ of habeas corpus is **DENIED**.

The Court **DENIES** a certificate of appealability on petitioner's claims because reasonable jurists would not find the Court's resolution of petitioner's claims debatable, nor conclude that the issues deserve encouragement to proceed further.  *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Petitioner nevertheless may proceed *in forma pauperis* on appeal because he was permitted to proceed *in forma pauperis* in the District Court and because an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3).

Dated:  April 19, 2012

                                        S/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

20

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on

April 19, 2012, by electronic and/or ordinary mail and also to
Thomas Plair at Macomb Correctional Facility, 34625 26 Mile
Road, New Haven, MI 48048.

S/Josephine Chaffee

Deputy Clerk